UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JUAN ANTONIA RIVERA-PUGA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-01589-TWP-DLP |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**ENTRY DISCUSSING MOTION FOR RELIEF PURSUANT TO
28 U.S.C. § 2255 AND DENYING CERTIFICATE OF APPEALABILITY**

For the reasons explained in this entry, Petitioner Juan Rivera-Puga's motion for relief pursuant to 28 U.S.C. § 2255 must be denied and the action dismissed with prejudice. In addition, the Court finds that a certificate of appealability should not issue.

**I. The § 2255 Motion**

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The scope of relief available under § 2255 is narrow, limited to "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)

(internal citations omitted).

## II. Factual Background

Mr. Rivera-Puga was indicted on August 17, 2011, on five counts of drug offenses. Crim. dkt. 42.[1] On August 3, 2012, Mr. Rivera-Puga pled guilty to one count pursuant to an agreement with the United States. *See* crim. dkt. 168. Notable terms of that agreement are as follow:

- Mr. Rivera-Puga agreed to plead guilty to Count I of the indictment, which charged him with conspiring to possess with intent to distribute, and to actually distribute, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Crim. dkt. 103 at ¶ 1.

- The government agreed to move to dismiss the remaining counts of the indictment upon entry of Mr. Rivera-Puga's sentence. *Id.*

- The government agreed to recommend the minimum sentence within the applicable U.S. Sentencing Guidelines range. *Id.* at ¶ 11(d).

- Mr. Rivera-Puga agreed that, in calculating his Guidelines range, his offense level would be increased by two levels based on his aggravating role as a supervisor or director of another conspirator's activities. *Id.* at ¶ 11(b).

- The government agreed that Mr. Rivera-Puga's offense level would be decreased by three levels based on his acceptance of responsibility. *Id.* at ¶ 11(c).

- In exchange for the government's concessions, Mr. Rivera-Puga agreed to waive his right to appeal his conviction and sentence. *Id.* at ¶ 10.

The Court accepted Mr. Rivera-Puga's guilty plea on August 3, 2012, and dismissed the remaining counts in the indictment. Crim. dkt. 144. Based on the terms of the agreement, the Court calculated Mr. Rivera-Puga's Guidelines range at 135–168 months in prison. Crim. dkt. 168 at 18:9–19:20. Consistent with the agreement, and based on the government's recommendation, the

---

[1] In this entry, references to "crim. dkt. *x*" refer to documents filed in Mr. Rivera-Puga's criminal case, No. 1:11-cr-00150-TWP-KPF. References to "civ. dkt. *y*" refer to documents filed in this case, No. 1:17-cv-01589-TWP-DLP.

2

Court entered a sentence of 135 months in prison. *Id.* at 20:24–22:12; crim. dkt. 144.

Mr. Rivera-Puga now asks the Court to vacate his conviction and sentence.

### III. Discussion

Mr. Rivera-Puga asserts four bases for relief in his motion. All are variations on the argument that Mr. River-Puga was not provided with effective assistance by his trial attorney, Richard Ford, and that he therefore was convicted and sentenced in violation of the Sixth Amendment.

A petitioner claiming ineffective assistance of counsel bears the burden of showing that (1) trial counsel's performance fell below objective standards for reasonably effective representation, and (2) this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *United States v. Jones*, 635 F .3d 909, 915 (7th Cir. 2011). To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt v. United States,* 574 F.3d 455, 458 (7th Cir. 2009). The Court must then consider whether, in light of all of the circumstances, counsel's performance was outside the wide range of professionally competent assistance. *Id.* In order to satisfy the prejudice component, the petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

For the reasons explained below, Mr. Rivera-Puga's claims of ineffective assistance fall short of this standard.

**A.     Failure to Properly Advise Regarding Aggravating Role and Appellate Waiver**

Mr. Rivera-Puga argues that Mr. Ford "provided incorrect advice" by misrepresenting the effect of his upward adjustment for playing an aggravating role in the conspiracy and "the finality effect" of his appellate waiver. Dkt. 2 at 5. This amounts to an argument that Mr. Rivera-Puga did

3

not enter his guilty plea knowingly and voluntarily because he was not "advised by competent counsel" and therefore was not "made aware of the direct consequences of the plea." *See, e.g.*, *United States v. Jordan*, 870 F.2d 1310, 1316 (7th Cir. 1989), *quoted in Hurlow v. United States*, 726 F.3d 958, 967–68 (7th Cir. 2013) ("a plea . . . cannot be 'knowing and voluntary' if it resulted from ineffective assistance of counsel.'"). When assessing the voluntariness of a petitioner's guilty plea under § 2255, "representations made to a court during a plea colloquy are presumed to be true." *Hurlow*, 726 F.3d at 968 (internal quotations and citations omitted). A petitioner "cannot obtain relief by the expedient of contradicting statements freely made under oath, unless there is a compelling reason for the disparity." *Nunez v. United States*, 495 F.3d 544, 546 (7th Cir. 2007), *judgment vacated and remanded on other grounds*, 554 U.S. 911 (2008).

Assuming that Mr. Ford failed to competently advise Mr. Rivera-Puga concerning the effects of the aggravating-role adjustment or the appellate waiver Mr. Rivera-Puga still must establish that he was prejudiced by Mr. Ford's incompetence. And, when a defendant pleads guilty pursuant to an agreement with the government, prejudice is difficult to establish. "In the context of plea agreements, the prejudice prong focuses on whether the deficient information was the decisive factor in a defendant's decision to plead guilty or to proceed to trial." *Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007) (applying *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985)).

Whatever misrepresentations Mr. Ford may have made before Mr. Rivera-Puga entered his guilty plea, Mr. Rivera-Puga's statements during his plea colloquy indicate that he fully understood the consequences of his guilty plea, his agreement to the aggravating-role adjustment, and his appellate waiver.

Mr. Rivera-Puga stated in open court that he reviewed and understood the terms of the plea agreement:

4

> THE COURT: Now, you have reached a plea agreement with the government in this case, and we're going to talk about the plea agreement. Did you have an opportunity to read and discuss the plea agreement with your lawyer before you signed it?
>
> THE DEFENDANT: Yes.

Crim. dkt. 168 at 7:22–8:5.

More specifically, Mr. Rivera-Puga stated that he understood that he had a right to appeal his conviction and sentence and that he was waiving those rights in exchange for the government's concessions:

> THE COURT: You do have a right, a statutory right, to appeal any conviction and any sentence that I impose on you, as well as the manner in which the sentence is determined. However, in exchange for concessions that the government has made in your plea agreement -- because they're going to dismiss those counts, and some other concessions—because of those things, you're waving your right to appeal the conviction, and you're waving your right to appeal any sentence imposed on any ground. Do you understand?
>
> THE DEFENDANT: Yes.

*Id.* at 13:14–23.

The Court explained that Mr. Rivera-Puga would be agreeing to a two-level increase to his offense level under the Guidelines based on his aggravating role, and he indicated that he understood the consequences of that agreement:

> THE COURT: You're agreeing that there should be a two-level increase because you supervised or directed the activities of at least one individual in this conspiracy.
>
> And to date, you've demonstrated acceptance of responsibility by pleading guilty. If you continue to accept responsibility and the government makes a motion, you will be entitled to -- up to a three-level reduction. Do you understand?
>
> THE DEFENDANT: Yes.

*Id.* at 14:5–13.

Finally, the Court offered Mr. Rivera-Puga an opportunity to present any questions to Mr.

5

Ford or to the Court, and he stated that he had none:

> THE COURT: And, Counsel—let's see. Mr. Rivera-Puga, I'm just about done asking you questions and ready to ask you, in a final and formal way, how do you plead to these charges. Before I do that, do you have any questions, either for me or for Mr. Ford, before I ask you this question?
>
> THE DEFENDANT: No.

*Id.* at 16:1–6.

Based on his statements during the plea colloquy, the Court cannot find that Mr. Rivera-Puga entered his guilty plea without an adequate understanding of the consequences of his plea bargain. Even if Mr. Ford did a poor or incomplete job of explaining the consequences of the plea agreement to Mr. Rivera-Puga before his change-of-plea and sentencing hearing, Mr. Rivera-Puga's statements demonstrate that he had all relevant information about the appellate waiver and the aggravating-role adjustment at the time he entered his plea. Therefore, it cannot be said that poor advice from Mr. Ford was a "decisive factor" in his decision to plead guilty. *Julian*, 495 F.3d at 498.

**B.     Failure to File Notice of Appeal**

Mr. Rivera-Puga's plea agreement included an appellate waiver. *See* crim. dkt. 103 at ¶ 10. In entering the agreement, Mr. Rivera-Puga "expressly waive[d] his right to appeal the conviction and any sentence imposed on any ground." *Id.* The agreement makes clear that Mr. Rivera-Puga waived his right to appeal "in exchange for the concessions made by the Government." *Id.* Chief among these concessions was the government's agreement to move to dismiss the remaining four counts in the indictment after the Court entered Mr. Rivera-Puga's sentence on Count I. *See id.* at ¶ 1. Additionally, the government agreed to recommend that the Court impose the lowest sentence within the applicable Guidelines range. *See id.* at ¶ 11(g). Finally, the United States promised to make the Court aware that Mr. Rivera-Puga had accepted responsibility and recommend a three-

level reduction in his Guidelines offense level. *Id.* at ¶¶ 7, 11(c). The effect of this reduction was significant: At an offense level of 34, Mr. Rivera-Puga's lowest prison sentence within the Guidelines range would have been 188 months, but, at an offense level of 31, his lowest sentence within the Guidelines range would was 135 months. *See* U.S. Sentencing Commission, *Guidelines Manual*, p. 407 (Nov. 1, 2011).

Even in view of this agreement, Mr. Rivera-Puga argues that he was deprived of effective assistance because his trial attorney failed to file a notice of appeal. By way of elaboration, Mr. Rivera-Puga states only that he instructed his attorney to appeal because he "felt the sentence was excessive," but his attorney did not do so. Civ. dkt. 2 at 4.

The Seventh Circuit has made clear that an attorney's failure to appeal a conviction or sentence after his client has waived appeal rights in a plea bargain does not, without more, satisfy the performance or prejudice prongs of *Strickland*. *See Nunez v. United States* (*Nunez II*), 546 F.3d 450, 456 (7th Cir. 2008). This rule stems in part from a lawyer's "duty to the judiciary to avoid frivolous litigation—and an appeal in the teeth of a valid waiver is frivolous." *Id.* at 455. It also stems in part from the lawyer's "duty to his client to avoid taking steps that will cost the client the benefit of the plea bargain." *Id.* "[W]hen a defendant appeals despite agreeing not to do so, the prosecutor may withdraw concessions made as part of the bargain." *Id.* (citing *United States v. Whitlow,* 287 F.3d 638 (7th Cir. 2002); *United States v. Hare,* 269 F.3d 859 (7th Cir. 2001)). Particularly in a case like Mr. Rivera-Puga's, where the defendant has bargained for a sentence reduction based in part on acceptance of responsibility, appealing in breach of the agreement can work against the defendant's interests. *See id.*

The Seventh Circuit has recognized that counsel may have a duty to appeal an issue not covered by a plea agreement's waiver provision (or even if the waiver's terms are ambiguous) or

7

where the defendant expresses a desire to withdraw his guilty plea with knowledge that the benefit of the bargain will be lost. *See id.* at 455, 456. Mr. Rivera-Puga's statement that he instructed his attorney to appeal because he thought the sentence was excessive does not fall into either category.

Mr. Rivera-Puga's agreement to waive his right to appeal was part of a bargain that secured dismissal of four charges and the government's promise to recommend a significantly reduced sentence. By appealing in breach of that agreement, Mr. Ford would have exposed Mr. Rivera-Puga to the risk of a longer sentence and prosecution for additional charges. As such, the Court cannot find that Mr. Ford's decision not to appeal was objectively unreasonable.

### C. Failure to Challenge Aggravating-Role Adjustment

In calculating Mr. Rivera-Puga's sentencing range under the Guidelines, the Court applied a two-level increase to his offense level pursuant to Guidelines § 3B1.1(c). Crim. dkt. 168 at 18:17–21. Mr. Rivera-Puga argues that Mr. Ford rendered ineffective assistance because he failed "to challenge the 'leadership' role enhancement." Civ. dkt. 2 at 7. Had he done so, Mr. Rivera-Puga explains, "Movant would have received a lesser sentence, inasmuch as there was not 5 or more individuals associated with the conspiracy." *Id.*

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. This presumption is particularly strong in the context of plea negotiations. "[T]he successful negotiation of a plea agreement involves factors beyond the control of counsel, including . . . the cooperation of the prosecutor, who has no obligation to offer such an agreement." *United States v. Hall*, 212 F.3d 1016, 1022 (7th Cir. 2000).

Section 3B1.1 calls for an increased offense level for defendants who act as organizers,

8

leaders, managers, or supervisors of others in criminal activities. *See Guidelines Manual* at p. 350. The magnitude of the increase depends as follows on the number of persons involved in the activity and the nature of the defendant's role:

> **§3B1.1. Aggravating Role**
>
> Based on the defendant's role in the offense, increase the offense level as follows:
>
> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by **4** levels.
>
> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by **3** levels.
>
> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by **2** levels.

*Id.*

Mr. Rivera-Puga's argument is grounded in the assertion that there were not five or more participants in the conspiracy and therefore appears to be based on the notion that he received a four-level enhancement based on 3B1.1(a). However, the transcript from Mr. Rivera-Puga's sentencing hearing makes clear that the Court applied a two-level increase pursuant to § 3B1.1(c):

> THE COURT: The defendant directed the activities of at least one individual, that being Luis Carlos Barraza, Jr. Therefore, two levels are added as adjustment for the defendant's role in the offense. The total of offense level is 34.

Crim. dkt. 168 at 18:17–21.

Section 3B1.1(c) requires only that the defendant serve as an organizer, leader, manager, or supervisor without regard for the number of participants. Mr. Rivera-Puga does not assert that he did not serve as an organizer, leader, manager, or supervisor in the conspiracy. As such, it is not clear that Mr. Ford had an objectively reasonable basis for challenging this adjustment. And,

9

even if he did, Mr. Rivera-Puga accepted the aggravating-role adjustment as part of a negotiated plea agreement that netted him substantial benefits as discussed in Part III(B) above. Therefore, the Court cannot conclude that Mr. Ford was objectively unreasonable for declining to challenge this adjustment more strenuously or that this strategy prejudiced Mr. Rivera-Puga.

**D.     Failure to Seek One-Year Reduction**

In some cases, a federal prisoner may be eligible to spend up to the final year of his term of imprisonment in a halfway house. *See generally* 28 U.S.C. § 3624(c)(1). Mr. Rivera-Puga asserts that, because he was not a U.S. citizen and was subject to deportation following completion of his prison sentence, he would not be eligible to spend any portion of his prison sentence in a halfway house. *See* civ. dkt. 2 at 8. Mr. Rivera-Puga argues that Mr. Ford should have sought a one-year decrease in his sentence to account for the fact that he would be required to spend his entire term in a prison and that, by failing to do so, Mr. Ford rendered constitutionally ineffective assistance. *See id.*

Mr. Rivera-Puga does not argue that Mr. Ford sought to negotiate a one-year sentence reduction and, upon failing, improperly advised him to plead guilty instead of taking his chances at trial. Rather, he appears to ask the Court to conclude that Mr. Ford failed to negotiate (or at least attempt to negotiate) a commitment from the United States to recommend a sentence accounting for Mr. Rivera-Puga's ineligibility to spend one year in a halfway house—and that his failure to do so rendered his representation constitutionally ineffective.

As an initial matter, the parties have not addressed the question of whether Mr. Rivera-Puga actually is ineligible to spend a portion of his sentence in a halfway house—or even that his eligibility to spend a portion of his sentence in a halfway house could have been resolved at the sentencing stage. As such, the Court cannot conclude that Mr. Ford's failure to seek the

government's promise to recommend a sentence reflecting that ineligibility prejudiced Mr. Rivera-Puga.

Assuming, though, that Mr. Rivera-Puga is not eligible to spend a portion of his sentence in a halfway house, the Court cannot find that Mr. Ford's failure to seek the government's recommendation of a correspondingly shortened sentence was objectively unreasonable. The plea agreement that Mr. Ford negotiated netted Mr. Rivera-Puga a 33-month sentence reduction and the dismissal of four charges. The government was not obligated to recommend an additional twelve-month reduction. *See Hall*, 212 F.3d at 1022. In fact, Mr. Ford may reasonably have concluded that chasing an additional twelve-month reduction would jeopardize the significant concessions he had already negotiated. Therefore, Mr. Rivera-Puga's argument does not overcome the presumption that Mr. Ford applied a sound negotiating strategy. *See Strickland*, 466 U.S. at 689.

Even assuming that Mr. Ford's strategy was unsound, the Court cannot conclude that Mr. Ford's failure to seek the government's promise to recommend an additional twelve-month reduction prejudiced Mr. Rivera-Puga. The United States was not obligated to offer any such reduction, and Mr. Rivera-Puga has not presented any evidence that the United States would have agreed to recommend an additional reduction had Mr. Ford asked for it. *See Delatorre v. United States*, 847 F.3d 837, 847 (7th Cir. 2017) ("Nothing in the record indicates that the prosecutor would have provided Delatorre . . . with a plea deal had Morelli performed any differently."). Mr. Rivera-Puga has not shown that Mr. Ford rendered ineffective assistance in this respect.

### IV. Conclusion and Certificate of Appealability

For the reasons explained in this Entry, Mr. Rivera-Puga has failed to show that he is entitled to the relief he seeks, and his motion for relief pursuant to 28 U.S.C. § 2255 must be

**denied.** Judgment consistent with this Entry shall now issue, and a copy of this Entry shall be **docketed** in No. 1:11-cr-00150-TWP-KPF-2.

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the court finds that Mr. Rivera-Puga has failed to show (1) that reasonable jurists would find this court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether [this court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 6/15/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JUAN ANTONIA RIVERA-PUGA
10237-028
GILMER - FCI
GILMER FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 6000
GLENVILLE, WV 26351

Brian L. Reitz
UNITED STATES ATTORNEY'S OFFICE
breitz@usa.doj.gov